414 So.2d 1032 (1982)
William Lanay HARVARD, Appellant,
v.
STATE of Florida, Appellee.
No. 47052.
Supreme Court of Florida.
April 15, 1982.
*1033 Richard L. Jorandby, Public Defender, and Craig S. Barnard, Chief Asst. Public Defender and Richard B. Greene, Asst. Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida, for appellant.
Jim Smith, Atty. Gen. and James Dickson Crock, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
This is an appeal from a death sentence which was reimposed upon appellant after a resentencing hearing pursuant to an order of this Court contained in Harvard v. State, 375 So.2d 833, 835 (Fla. 1978) (on rehearing). We have jurisdiction under article V, section 3(b)(1), Florida Constitution. We affirm.
To properly address the issues, it is necessary to establish chronologically the events culminating in this proceeding. Appellant was convicted in 1974 of first-degree murder for the shooting death of his second ex-wife, Ann Bovard. The facts of this murder, described in more detail in our original opinion, reflect that appellant waited in his automobile for Ms. Bovard to leave her place of employment, then followed her for some distance, pulled alongside her car, and discharged a shotgun blast into her neck, killing her instantly. The jury recommended the death penalty and the trial judge agreed, imposing the death sentence after concluding that no mitigating circumstances existed to outweigh the applicable aggravating circumstances.
While this case was pending on appeal before this Court, the United States Supreme Court, in Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), decided that it is a denial of due process for the death sentence to be imposed if the trial judge, in weighing the aggravating and mitigating circumstances of the case, considers confidential information which the defendant had no opportunity to deny or explain. As a result of this U.S. Supreme Court decision, this Court directed *1034 all trial judges in the state to advise the Court whether they had imposed the death sentence in consideration of any information not known to the defendants. The trial judge in the instant case responded that he had, in fact, considered a confidential portion of the presentence investigation report and information regarding appellant's military record, furnished by the United States Marine Corps, which had not been made available to appellant or his counsel.
We affirmed the conviction of appellant, but, to comply with the Gardner decision, we vacated the death sentence and remanded the case for resentencing, stating that the hearing would be
without the necessity of convening an advisory jury, but with directions to provide counsel for the state and the defendant an opportunity to explain, contradict, and argue regarding the relevance, materiality, and import of the confidential information and military history, as well as other matters properly considered by the trial court concerning appellant's sentence... .
Harvard, 375 So.2d at 835. The trial judge proceeded in accordance with this direction and, at the conclusion of the resentencing proceeding, reimposed the death sentence. In this appeal, appellant argues that the Gardner remand resentencing procedure denied him due process of law.
Appellant first attacks the procedures used by the trial judge in reimposing the death sentence, arguing that the nine-month delay between the announcement of the sentence at the conclusion of the hearing and the issuance of the written final judgment of resentencing demonstrates that the trial judge failed to properly weigh the aggravating and mitigating factors. We find no reversible error in the manner in which the trial judge rendered his decision, although we suggest that the announcement of the judge's decision and the filing of written findings should be done simultaneously. The judge reimposed the death sentence after considering all of the information available to him, including the evidence presented at resentencing. His conclusion that the death sentence was again appropriate clearly indicates that his finding is based upon the failure of the defense to present sufficient evidence at resentencing to rebut the information contained in the confidential portion of the presentence investigation report or in the military records. The written order expressly states that the defendant had failed to show harm or errors in the confidential matters considered in the original sentencing procedure. The evidence in this record not only confirms that finding, but it also reflects that the confidential information was primarily cumulative in light of the evidence actually presented at the original sentencing hearing. We find no error.
The second error alleged by appellant is the trial judge's refusal to assign the resentencing hearing to a new judge. Appellant argues that because the original trial judge considered confidential material in imposing the first death sentence, he could have been influenced at resentencing by this improper information and by his prior ruling. We reject this argument. This case was remanded to comply with the rule announced in Gardner, and nothing in Gardner requires the assignment of a new judge to conduct the resentencing procedures. Furthermore, trial judges are routinely made aware of information which may not be properly considered in determining a cause. Our judicial system is dependent upon the ability of trial judges to disregard improper information and to adhere to the requirements of the law in deciding a case or in imposing a sentence. Alford v. State, 355 So.2d 108 (Fla. 1977). The written judgment of resentencing in this case is detailed, logical, and fully supported by the record.
Appellant next claims that, at resentencing, the trial judge erroneously placed limitations on his presentation of evidence concerning the events which resulted in his 1969 conviction of a felony involving violence to his first wife's sister. This conviction constitutes a statutory aggravating circumstance under section 921.141(5)(b), Florida Statutes (1979). At the original sentencing *1035 hearing in 1974, the state presented evidence of the aggravated assault conviction, consisting of the testimony of the victims in the incident, Betty Ann Phillips (Harvard's first wife) and her sister, Mary Jane Sweat. Ms. Phillips described the attack in her 1974 testimony:
A Well, we arrived at the house and we walked in and I had noticed the kids' suitcase sitting in the hall and knew something was wrong and we both just looked at each other. About that time Mr. Harvard stepped out of the side closet and he had a small pistol in his hand and he looked at me and said, "I told you the next time you took me back to court I would kill you" and Mary 
Q Is that your sister?
A They started talking about his mother and I had talked to Mr. Harvard, too, about if I wanted us to go back together he would. Just by talking to him, I knew what he was there for, and they kept on, Mary, arguing about his mother, that he told her that she had called him and told her things that weren't true and Mary said she called his mother and told her about how he was acting. And that was all that she had said to his mother. And, about that time, Mr. Harvard moved his hand up and shot her right in the face and I had screamed and Mary took off for the front door and he shot her again, going out the door. And then I ran out the back door and, about that time, I was standing there beside the carport where I was and he pushed me down to the ground and I remember his foot going on my back and that is all I remember.
Q Were you shot?
A Yes, sir.
Q Where?
A On the top of the head.
This testimony is reflected in the original sentencing order and in the first opinion of this Court, although neither the state nor the appellant brought to the attention of the trial court or of this Court in the original appeal the fact that the offense to which appellant pleaded guilty was the assault against his sister-in-law rather than an assault against his first wife. The trial judge corrected that error in his findings on resentencing. In the 1974 hearing, appellant testified in his own behalf regarding the incident, characterizing the shootings as accidental. The confidential presentence investigation report also included a summary of the events surrounding the Jacksonville incident which is consistent with the testimony at the original sentencing hearing.
Appellant complains that he was denied due process in the second sentencing hearing because the trial judge refused to admit some portions of the testimony offered by appellant's former attorney relative to the 1969 proceeding. The record shows that the trial judge liberally allowed appellant to present considerable testimony and evidence concerning the assault charge. Appellant testified in his own behalf, was allowed to present the testimony of his former lawyer, and was also allowed to introduce an unauthenticated transcript of the 1969 preliminary hearing. In his testimony, appellant again principally disagreed with the characterization placed on these 1969 shootings by both victims' testimony and in the summary contained in the presentence investigation report. He admitted he shot his first wife and her sister, but excused his actions in part because of what he perceived as the misconduct of these women.
To a limited extent, the trial judge allowed appellant's 1969 attorney to testify concerning his recollection of the inconsistencies in the testimony presented by the first wife at the preliminary hearing in 1969 as compared to her testimony at the sentencing hearing in 1974. In his resentencing order, the trial judge directly addressed this asserted impeachment of the first wife's testimony in the 1974 sentencing proceeding, stating:
Such impeachment should have been done at the time of trial and it therefore appears that this was a wrongful attempt to *1036 belatedly impeach evidence presented by the State to the advisory jury. The Supreme Court's Remand was not for this purpose. As to the testimony contained in transcript of the proceedings of the probable cause hearing before the Justice of the Peace in Jacksonville in 1969, (more than five years earlier than the testimony of the former wife and the former sister-in-law during the bifurcated sentencing phase), this Court finds it to be substantially (and remarkably so for the passage of time involved) consistent and uncontradicting.
This Court's remand for resentencing was for the purpose of redressing a Gardner violation. Under our order, the trial judge was obligated to consider the evidence offered by appellant to explain, contradict, or rebut information which had been previously undisclosed to appellant or his counsel. We conclude that the trial judge went beyond what was necessary in allowing appellant a full opportunity to present evidence at the resentencing hearing in rebuttal of the confidential information previously considered; we find no error.
In his final assertion of error, appellant argues that the aggravating factors of heinous, atrocious, and cruel and of a previous conviction of a violent felony were improperly applied and that the trial judge failed to adequately consider mitigating circumstances. The conclusion that this murder was heinous, atrocious, and cruel was based upon the following analysis in the resentencing order:
While the defendant and Ann Bovard had been divorced approximately two months, they had been separated for several months, and during the separation the defendant had engaged in a series of harassing actions. In addition, the defendant enclosed in a Christmas card he sent to Ann Bovard in December, 1973, a note saying, "You will never see Christmas." In January, 1974, after the divorce, the defendant told a coworker that he would "do anything to get her out of his hair." On the night of the killing, February 16, 1974, the defendant waited outside of his second former wife's place of employment, and when she left he followed her for approximately ten miles to the entrance of the subdivision in which Ann Bovard lived, where he pulled up close beside her apparently momentarily stopped vehicle and with a 12-gauge shotgun shot her in the neck with a shot shell loaded with pellets. The blast tore away a portion of her neck, and she apparently died almost instantly. Such activities (the waiting, the following, and the shooting from a car window) clearly demonstrates that this premeditated homicide was a calculated and cold blooded execution. Such killing was done without any provocation on the part of the victim.
Appellant argues that this homicide was not especially heinous, atrocious, or cruel, as described in section 921.141(5)(h), Florida Statutes (1979), and as interpreted by this Court, principally because there was instantaneous death from gunshot wounds with no "additional acts as to set the crime apart from the norm of capital felonies." State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974). We agree with the trial judge, however, and find that appellant's lying in wait for and stalking of Ms. Bovard, compounded by appellant's previous harassment of her, constitute sufficient "additional acts" to justify application of the heinous, atrocious, or cruel aggravating factor.
Appellant also claims that the second aggravating factor, the aggravated assault conviction, should not be used to support the death sentence under the circumstances of the incident as he relates them. Appellant was afforded a full opportunity at the resentencing hearing to present evidence about the incident, and he does acknowledge that he was convicted in 1969 of aggravated assault. This conviction clearly is a proper aggravating circumstance for the trial judge to consider. § 921.141(5)(b).
We agree with the trial judge's conclusion that no mitigating circumstances *1037 existed sufficient to outweigh the aggravating factors in this case and find that the reimposed sentence was based on reasoned judgment. Holmes v. State, 374 So.2d 944 (Fla. 1979). See also Palmes v. State, 397 So.2d 648 (Fla. 1981). Further, we reject appellant's attempt to seek review of issues in this proceeding which could have been raised in the 1977 appeal. The reimposition of the death sentence is affirmed.
It is so ordered.
SUNDBERG, C.J., and ADKINS, OVERTON, ALDERMAN and McDONALD, JJ., concur.
BOYD, J., dissents with an opinion.
BOYD, Justice, dissenting.
For the reasons I stated when this case was originally before the Court on appeal, Harvard v. State, 375 So.2d 833, 835 (Fla. 1977), I dissent to the affirmance of the sentence of death and would direct that appellant be sentenced to life imprisonment without eligibility for parole for twenty-five years.