No. 82–5444. HARVARD *v.* FLORIDA. Sup. Ct. Fla.
Certiorari denied.

JUSTICE MARSHALL, with whom JUSTICE BRENNAN joins,
dissenting.

The issue presented by this case is whether a violation of
*Gardner* v. *Florida*, 430 U. S. 349 (1977), can be remedied by
a remand to the original sentencing judge for a limited hear-
ing in which the burden is placed upon the defendant to rebut
or explain the information which had not been disclosed to
him at the initial sentencing proceeding.

I

In 1974 petitioner was convicted after a jury trial of the
first-degree murder of his ex-wife. In a separate sentencing
proceeding a majority of the jury voted to recommend a
death sentence. Under the Florida capital sentencing stat-
ute the jury's verdict in the sentencing proceeding is only ad-
visory; the actual sentence is determined by the judge. See
Fla. Stat. § 921.141 (1981). In this case the judge found that

two statutory aggravating circumstances were applicable. He determined that the defendant had previously been convicted of a felony involving the use of violence to the person, and that the murder was especially heinous, atrocious, or cruel. The judge also found that none of the statutorily enumerated mitigating circumstances were applicable. He concluded that a death sentence should be imposed.

On appeal, the Florida Supreme Court affirmed petitioner's conviction and sentence in a brief *per curiam* opinion, with two judges dissenting from the affirmance of the death sentence. 375 So. 2d 833 (1977), cert. denied, 441 U. S. 956 (1979). Petitioner sought rehearing in light of *Gardner* v. *Florida, supra,* suggesting that the trial judge, in making his sentencing decision, may have "considered matters not provided to the jury or defense counsel." The Florida Supreme Court issued an order directing the trial judge to indicate whether he had in fact relied on undisclosed information. In response the judge stated that he had examined a confidential portion of a presentence report as well as information furnished by the United States Marine Corps concerning the defendant's military record. After receiving this response, the Florida Supreme Court vacated petitioner's death sentence and remanded to the trial judge for resentencing following a hearing concerning the previously undisclosed information. 375 So. 2d, at 835 (1978).

On remand the trial judge denied petitioner's motion to substitute another judge. A hearing was held in the trial court on February 9, 1979. The scope of the hearing was narrowly limited. The judge provided petitioner with the previously undisclosed material and invited him to correct or rebut any misstatements. The presentence report discussed a prior assault committed by petitioner against his first wife and her sister. Since one of the aggravating circumstances that the judge had found at the initial sentencing proceeding was that petitioner had previously been convicted of a felony involving violence, petitioner's counsel attempted to show

that the offense in question, for which petitioner had received only a 3-month jail sentence, was not as serious as the presentence report indicated.

Following the hearing the judge took the matter under advisement. More than six months later, on August 22, 1979, he indicated that he would reimpose the death sentence. In March 1980 the judge issued proposed findings of fact and requested comment concerning whether four aggravating circumstances that he proposed to find applicable would "pass appellate review." Following comment by the parties, the judge limited his order to two aggravating circumstances.

The trial court finally issued its sentencing order in May 1980. The order stated that the evidence offered by petitioner at the 1979 hearing "did not contradict the information provided this Court in the confidential portion of the presentence investigation." The court refused to consider evidence and argument presented at the hearing unless it rebutted or explained the previously undisclosed information. In addition, the court made clear that even evidence or argument that was relevant to the previously undisclosed information was "beyond the scope of the resentencing Mandate" and would not be considered if it could have been presented in the initial sentencing proceeding to rebut or explain testimony given in that proceeding. Specifically, the court refused to consider efforts by petitioner to impeach testimony at the first proceeding concerning the assault upon his first wife, ruling that "[s]uch impeachment should have been done at trial and it therefore appears that this was a wrongful attempt to belatedly impeach evidence presented by the State to the advisory jury." The court concluded that "the sentence, as originally imposed, was appropriate."

On appeal, the Florida Supreme Court affirmed the death sentence. 414 So. 2d 1032 (1982). The court rejected petitioner's claim that the proceeding on remand had been inadequate to remedy the earlier due process violation. It emphasized that the trial judge's "conclusion that the death

sentence was again appropriate clearly indicates that his finding is based upon the failure of the defense to present sufficient evidence at resentencing to rebut the information contained in the confidential portion of the presentence investigation report or in the military records." *Id.*, at 1034. Justice Boyd dissented.

## II

I continue to adhere to my view that the death penalty is unconstitutional under all circumstances. I would therefore grant certiorari and vacate the death sentence on this basis alone. If the State is to be permitted to impose this uniquely irreversible penalty, however, it should at least be required to do so through procedures that provide some assurance of fairness and reliability in the sentencing determination. In this case petitioner was initially sentenced to death in 1974 after a proceeding in which the trial judge considered highly material information which he had not disclosed to petitioner or his counsel. The Florida Supreme Court has now held that this clear constitutional violation was remedied by a narrowly circumscribed hearing held by the same trial judge five years later—a hearing at which the burden was shifted to petitioner to explain or rebut the previously undisclosed information and thereby persuade the judge not to reimpose the death sentence. Even accepting the prevailing view that the death penalty can constitutionally be imposed under certain conditions, this restricted hearing was plainly inadequate to remedy the blatant violation of due process at the first sentencing proceeding. For the reasons set forth below, I believe the only adequate remedy would have been a new sentencing proceeding before a different judge.

## A

In *Gardner* v. *Florida*, 430 U. S. 349 (1977), this Court held that it is a denial of due process for the sentencer in a capital case to consider information that the defendant "had no opportunity to deny or explain." *Id.*, at 362. As the plu-

rality opinion in *Gardner* stated, "[o]ur belief that debate between adversaries is often essential to the truth-seeking functions of trials requires us . . . to recognize the importance of giving counsel an opportunity to comment on facts which may influence the sentencing decision in capital cases." *Id.*, at 360. A litigant simply cannot "present his case effectively" unless he is "cognizant of all the facts before the [decisionmaker]." *Gonzalez* v. *United States*, 348 U. S. 407, 413 (1955).

It is undisputed that the procedure followed in the first sentencing proceeding denied petitioner the right to confront all the evidence against him. In response to the Florida Supreme Court's inquiry, the trial judge explicitly stated that some of the information he had considered had not been disclosed to petitioner. This undisclosed information consisted of petitioner's military record and a portion of a presentence report. At the initial sentencing hearing petitioner had no opportunity whatsoever to rebut or explain this information.

B

The remedy for a *Gardner* violation must take account of the nature of a capital sentencing proceeding. For constitutional purposes, such a proceeding is analogous to a trial. See *Bullington* v. *Missouri*, 451 U. S. 430, 438 (1981) (a capital sentencing proceeding is "in all relevant respects . . . like the immediately preceding trial on the issue of guilt or innocence"). See also *Green* v. *Georgia*, 442 U. S. 95, 97 (1979) (defendant is entitled to "a fair trial on the issue of punishment"). The decision whether a defendant shall live or die does not simply depend upon the exercise of discretion based on all the evidence before the sentencer, as does the typical sentencing decision in a noncapital case. It depends instead upon proof of specific facts. Just as the State must prove the elements of the crime to obtain a conviction, it must likewise prove one or more statutory aggravating circumstances to obtain a death sentence. Moreover, the State must convince

the sentencer that the statutory aggravating circumstances, if any, outweigh any mitigating circumstances. Only if the State discharges these burdens can it obtain a death sentence.

Because a capital sentencing proceeding has "the hallmarks of [a] trial on guilt or innocence," *Bullington* v. *Missouri, supra,* at 439, a defendant who has been denied a fair sentencing proceeding is entitled to a new sentencing proceeding, just as a defendant who has been denied a fair trial is entitled to a new trial. A *Gardner* violation is always reversible error, for reliance on information that was not disclosed to the defendant is at odds with the basic premises of the adversary process and thus inevitably denies the defendant a fair sentencing proceeding. See *Gardner* v. *Florida, supra,* at 362 (rejecting the suggestion that it would be a sufficient remedy for the Florida Supreme Court to consider the undisclosed information in reviewing the appropriateness of the death sentence); *Chapman* v. *California,* 386 U. S. 18, 23 (1967) ("there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error") (footnote omitted). The remedy for a *Gardner* violation must therefore be a new sentencing proceeding.[1]

Nothing short of a new sentencing proceeding can afford the defendant the fair sentencing determination to which he is entitled under the Constitution. When a trial court commits reversible constitutional error in the course of a criminal trial, an appellate court does not remand for a hearing in which the correctness of the earlier verdict is presumed and the defendant is saddled with the burden of demonstrating that the verdict should have been different. This Court has never approved such a procedure. To obtain a conviction following reversal on appeal, the State must afford the defendant "a new trial free of constitutional infirmity." *Haynes* v. *Washington,* 373 U. S. 503, 518–519 (1963) (admis-

---

[1] Since the undisclosed information was not considered by the advisory jury, there is no need to convene a new jury.

sion of coerced confession). See also, *e. g.*, *Sheppard* v. *Maxwell*, 384 U. S. 333, 363 (1966) (prejudicial publicity prior to and during trial); *Glasser* v. *United States*, 315 U. S. 60, 76 (1942) (infringement of right to counsel). To sentence petitioner to death, the State must likewise afford him a new sentencing proceeding free of constitutional infirmity.

## C

The narrowly circumscribed hearing held on remand in this case was a poor substitute for a new sentencing proceeding. An opportunity for rebuttal, explanation, and persuasion that comes only after the sentencer has come to a decision, and that is limited to the previously undisclosed information, can scarcely replace an opportunity to address *all* the information to be considered by the sentencer *before* he makes a decision.

First, an opportunity to address the undisclosed information in isolation from all the other evidence in the case cannot be equated with an opportunity to address the information as part of counsel's overall presentation. The presentation made by petitioner's counsel at the initial sentencing proceeding might well have differed in any number of ways had he known that, though his client had received only a 3-month sentence for the prior offense, the judge had in front of him a report that said petitioner "fully intended to kill" his first wife and his sister-in-law. For example, he might have deemed it necessary to subject petitioner's first wife and sister-in-law to more intensive cross-examination. Similarly, he might have chosen to introduce different or additional evidence in an attempt to demonstrate mitigating circumstances.

Second, the hearing on remand was inadequate because the judge had heard all the other pertinent evidence five years earlier. Even if he went back and read the transcript of the earlier proceedings, a cold record cannot recreate testimony. A witness may be credible on paper but not on the stand. In evaluating petitioner's new evidence and argument, and in

considering it in the context of all the evidence introduced with respect to sentencing, the judge could have taken the credibility of the witnesses into account only in the unlikely event that he somehow remembered his impression of the testimony at the first proceeding.

Third, the judge had already decided once that petitioner deserved a death sentence. When a decisionmaker has made so difficult a choice, the natural human tendency is to rationalize it and suppress doubts that the decisionmaker may have had. However fairminded the judge may have been, "a certain reluctance is to be expected after the [judge], albeit on incomplete presentation, has rejected the [defendant's] claim" that he should receive a life sentence. *Gonzalez* v. *United States*, 348 U. S., at 417.[2] The Court has recognized in other contexts that, notwithstanding the faith typically placed in trial judges to act impartially, fairness may require that resentencing be entrusted to a different judge. In *Santobello* v. *New York*, 404 U. S. 257 (1971), where the prosecutor breached a plea bargain by recommending the maximum sentence and the judge imposed such a sentence, the Court held that "the interests of justice" demanded, at a minimum, "resentenc[ing] by a different judge," *id.*, at 262 and 263, even though the original sentencing judge had stated that the prosecutor's recommendation did not influence him and the Court stated that it had "no reason to doubt that," *id.*, at 262.[3] In a capital case such as this, the interests of justice surely require no less.

---

[2] In *Gonzalez* the Government failed to provide a draft registrant who claimed conscientious objector status with a copy of its recommendation to the Appeal Board. The Court held that the denial of an opportunity to rebut the report was not remedied by a procedure whereby, *after* the Appeal Board made its decision, the registrant could obtain the report and request a reopening of his classification. 348 U. S., at 417.

[3] Although in many contexts the law assumes that a judge can fairly reconsider a case even though he has previously reached a decision which for some reason has been set aside on appeal, reliance on information not disclosed to the defendant can be particularly prejudicial where a judge rather

## III

A defendant is denied due process when he is sentenced to death by a judge who relied on information that the defendant had no opportunity to contest or rebut. That denial of due process can only be remedied by a new sentencing proceeding conducted in conformity with the Constitution. It is not remedied by a remand to the original sentencing judge for a hearing in which the defendant bears the burden of rebutting or explaining the information, and in which the judge will not consider any evidence or argument that is not in the nature of rebuttal or that could have been presented at the initial proceeding. This sort of limited hearing might conceivably be appropriate to correct an evidentiary error in a civil antitrust action, but it is scarcely sufficient to correct a due process violation where a man's life is at stake. I therefore dissent.

---

than a jury is the decisionmaker. When a jury considers such information, there may at least be an exchange of views among the jurors as to its significance. There is no opportunity for such an exchange if the information is considered only by the judge. Cf. *Herring* v. *New York,* 422 U. S. 853, 863–864, n. 15 (1975) (in a bench trial in a criminal case, defense counsel cannot be denied an opportunity to make a closing argument):

"[T]he 'collective judgment' of the jury 'tends to compensate for individual shortcomings and furnishes some assurance of a reliable decision.' Powell, Jury Trial of Crimes, 23 Wash. & Lee L. Rev. 1, 4 (1966). In contrast, the judge who tries a case presumably will reach his verdict with deliberation and contemplation, but must reach it without the stimulation of opposing viewpoints inherent in the collegial decisionmaking process of a jury."

In this case the possibility that a different sentence might have been imposed but for the *Gardner* violation is underscored by the fact that in the jury phase of the first sentencing proceeding—the only phase in which petitioner was afforded a fair opportunity to meet the evidence against him—4 of the 12 jurors voted to recommend a life sentence.