486 So.2d 537 (1986)
William Lanay HARVARD, Appellant,
v.
STATE of Florida, Appellee.
No. 67556.
Supreme Court of Florida.
February 6, 1986.
Rehearing Denied April 24, 1986.
Richard L. Jorandby, Public Defender, Craig S. Barnard, Chief Asst. Public Defender, and Richard H. Burr, III, and Michael A. Mello, Asst. Public Defenders, Fifteenth Judicial Circuit, West Palm Beach, for appellant.
*538 Jim Smith, Atty. Gen. and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for appellee.
PER CURIAM.
William Lanay Harvard appeals from the trial court's denial of his motion for post-conviction relief under Florida Rule of Criminal Procedure 3.850 and seeks a stay of execution. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We grant relief in part and remand for a new sentencing hearing.
In 1975, Harvard was convicted of the first-degree murder of his former wife and sentenced to death. On direct appeal, we affirmed Harvard's conviction, vacated the death sentence because it did not comply with the requirements of Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), and remanded the case for resentencing. Harvard v. State, 375 So.2d 833 (Fla. 1977), cert. denied, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979). Pursuant to that order, at the resentencing proceeding, held in 1980, appellant was permitted only the opportunity to rebut confidential matters considered by the trial judge in violation of Gardner in the earlier proceeding. The trial judge again imposed the death sentence and entered a new sentencing order. On appeal, we affirmed. Harvard v. State, 414 So.2d 1032 (Fla. 1982), cert. denied, 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 979 (1983).
Harvard contends (1) that the sentencing judge stated, in this post-conviction proceeding, that he limited consideration of mitigating factors to those enumerated in the capital sentencing statute when he imposed Harvard's death sentence, contrary to the United States Supreme Court decision in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); (2) that because trial counsel misunderstood the law concerning the use of nonstatutory mitigating circumstances, counsel failed to investigate and present available evidence of nonstatutory mitigating circumstances; (3) that he was denied effective assistance of counsel in the sentencing proceeding because his counsel (a) failed to adequately prepare to ameliorate evidence of a prior conviction, (b) failed to obtain an evaluation of his mental capacity at the time of the offense, (c) made an improper closing argument, and (d) failed to object to portions of the prosecutor's final argument which Harvard claims were improper; (4) that the penalty phase instructions were not complete; (5) that Florida's capital sentencing statute is unconstitutional because electrocution is a cruel and unusual punishment and because capital punishment is applied in an arbitrary and discriminatory manner.
With respect to the first two issues, Harvard draws our attention to the recent en banc decisions of the Eleventh Circuit Court of Appeals in Hitchcock v. Wainwright, 770 F.2d 1514 (11th Cir.1985), and Songer v. Wainwright, 769 F.2d 1488 (11th Cir.1985). The relevant facts of Songer are very similar to those of the instant case. Songer was sentenced to death in 1974, four years before the United States Supreme Court handed down its decision in Lockett. The sentence was vacated and the case remanded on a Gardner violation. Songer v. Florida, 430 U.S. 952, 97 S.Ct. 1594, 51 L.Ed.2d 801 (1977). At resentencing, which took place in 1977, the trial judge limited Songer to reviewing and rebutting the information considered by the judge in violation of Gardner. During proceedings held in early 1985, the trial judge indicated he had not considered any nonstatutory mitigating evidence in sentencing Songer to death. In an en banc decision, a unanimous court of appeals held that, in light of the judge's statements, and its view that the United States Supreme Court decision in Lockett is retroactive, Songer, 769 F.2d at 1489 (citing Eddings v. Oklahoma, 455 U.S. 104, 118, 102 S.Ct. 869, 878, 7 L.Ed.2d 1 (1982); Jordan v. Arizona, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978); Spivey v. Zant, 661 F.2d 464 (5th Cir.1981), cert. denied, 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982)), Songer is entitled to a new sentencing hearing. A majority of that court ruled the case should be remanded to the trial judge for resentencing to permit Songer the opportunity to *539 present nonstatutory mitigating circumstances. Five judges dissented from that portion of the decision, expressing their belief that a penalty phase proceeding before a new jury is mandated.
In Hitchcock, released less than two weeks after Songer, the defendant asserted that, at the time of his capital sentencing in 1977, "Florida law unconstitutionally discouraged his attorney from investigating and presenting nonstatutory mitigating evidence." 770 F.2d at 1515-16. After examining the trial record, the court of appeals denied relief, determining that Hitchcock's counsel's presentation to the jury would not have been "appreciably different" had counsel been aware that Florida law permitted the introduction of nonstatutory mitigating evidence. Id. at 1517. In so concluding, the court noted that at trial the defense had introduced testimony of Hitchcock's family members relating to his non-violent disposition, difficult childhood, and solid character traits, and that defense counsel had admonished the jury to "consider everything together ... the whole picture, the whole ball of wax," in reaching its sentencing recommendation. Id. at 1518.
It is our independent view that an appellant seeking post-conviction relief is entitled to a new sentencing proceeding when it is apparent from the record that the sentencing judge believed that consideration was limited to the mitigating circumstances set out in the capital sentencing statute in determining whether to impose a sentence of death or life imprisonment without parole for twenty-five years. See Lockett; Eddings; cf. Songer v. Wainwright, ___ U.S. ___, 105 S.Ct. 817, 83 L.Ed.2d 433 (1985) (Brennan, J., dissenting); Jacobs v. Wainwright, ___ U.S. ___, 105 S.Ct. 545, 83 L.Ed.2d 809 (1984) (Marshall, J., dissenting). In his order denying relief, the trial judge in the instant case addressed the allegation that he failed to consider nonstatutory mitigating circumstances and expressly found that "reasonable lawyers and judges at the time of Mr. Harvard's trial could have mistakenly believed that nonstatutory mitigating circumstances could not be considered. The court certainly carried out its responsibility on the basis of that premise at the time of Mr. Harvard's trial." We note that nonstatutory mitigating factors may arise not only from evidence presented in the penalty phase but also from evidence presented and observations made in the guilt phase of the proceeding. Whether nonstatutory factors actually presented in the guilt phase or the newly asserted nonstatutory mitigating factors would have influenced the trial judge is a determination which, under these circumstances, should be made by the trial judge rather than by this Court on the face of a cold record. In view of the trial judge's statement in this case, and the fact that the scope of appellant's presentation at his 1980 resentencing was limited pursuant to this Court's order, we have no alternative but to conclude that appellant's death sentence was imposed in violation of Lockett and that appellant is, therefore, entitled to a new sentencing hearing.
We reject the argument that the trial judge's denial of post-conviction relief in this proceeding constitutes, by inference, a reevaluation of the alleged mitigating factors. We hold that a new sentencing hearing must be held before the trial judge with directions that he allow appellant to present evidence of appropriate nonstatutory mitigating circumstances. The trial judge may, in his discretion, convene a new sentencing jury, if he concludes that its recommendation would be helpful in his final sentencing decision. This Court has previously recognized that, at the time appellant was originally sentenced, our death penalty statute could have been reasonably understood to preclude the introduction of nonstatutory mitigating evidence. See Jacobs v. State, 396 So.2d 713 (Fla. 1981); Perry v. State, 395 So.2d 170 (Fla. 1980). See also Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). We emphasize that we certainly do *540 not fault the trial judge for his conduct in this matter and, in fact, commend him for his candor.
In view of our decision in this cause, it is important to note the distinction between this case and Hitchcock. In Hitchcock, the fact that nonstatutory mitigating evidence was presented and argued to the court and jury effectively negated Hitchcock's assertion that the evidence was not considered in the sentencing process. Further, there was no evidence the trial judge believed he did not have the authority to consider nonstatutory mitigating factors. See Hitchcock v. State, 432 So.2d 42 (Fla. 1983), and 413 So.2d 741 (Fla.), cert. denied, 459 U.S. 960, 103 S.Ct. 274, 74 L.Ed.2d 213 (1982).
We agree with the trial judge that the remaining issues are without merit or could have been raised on appeal. With regard to the claim of ineffective assistance of counsel during the penalty phase of the trial, we find no factual dispute concerning counsel's conduct. We conclude, as did the trial judge, that the conduct of Harvard's counsel, given the state of the law on the date the case was tried, reflects reasonable professional judgment, and that appellant has failed to make a showing of ineffectiveness sufficient to meet the test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and Knight v. State, 394 So.2d 997 (Fla. 1981). See also Ruffin v. Wainwright, 461 So.2d 109 (Fla. 1984); Clark v. State, 460 So.2d 886 (Fla. 1984); Dobbert v. State, 456 So.2d 424 (Fla. 1984); Downs v. State, 453 So.2d 1102 (Fla. 1984). We also reject appellant's claim that the jury instructions in the penalty phase were unfair because they failed to inform the jury as to the proper burden of proof and as to its role in determining whether the death penalty should be applied. These are not proper issues for consideration in a post-conviction relief proceeding. See Adams v. State, 456 So.2d 888 (Fla. 1984); Zeigler v. State, 452 So.2d 537 (Fla. 1984); Armstrong v. State, 429 So.2d 287 (Fla.), cert. denied, 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983). We have previously rejected the claim that Florida's death penalty statute is unconstitutional because it provides for execution by electrocution and that it is applied in an arbitrary and discriminatory manner. See Zeigler; Adams v. State, 449 So.2d 819 (Fla. 1984); Sullivan v. State, 441 So.2d 609 (Fla. 1983); Booker v. State, 397 So.2d 910 (Fla.), cert. denied, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981).
For the reasons expressed, we affirm in part and reverse in part the trial court's order denying appellant's motion for post-conviction relief, and we remand this cause for a new sentencing hearing by the trial judge during which appellant shall be allowed to present all appropriate nonstatutory mitigating evidence; the trial judge may, in his discretion, empanel a new sentencing jury. We direct that this sentencing hearing be completed and the sentence imposed within ninety days from the date this opinion is final. We grant the stay of execution pending final disposition of this case.
It is so ordered.
OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
ANNE C. BOOTH, Associate Justice, dissents with an opinion, in which BOYD, C.J., and CHARLES MINER, Associate Justice, concur.
BOOTH, Associate Justice, dissenting.
I respectfully dissent. The majority view as expressed appears inconsistent with prior decisions of this Court and of the United States Supreme Court and federal courts. The order of the trial court rejecting appellant's claim to vacate sentence should be affirmed.
Harvard was tried by a jury, found guilty of murder in the first degree, and sentenced to death for the brutal shotgun slaying of one Ann Bovard. The slaying occurred in February of 1974, and judgment and sentence of conviction were entered in October of 1974. The conviction and sentence were initially affirmed by this Court on April 7, 1977, in an opinion setting *541 out the aggravated nature of the crime (375 So.2d 833, 834-35):
The aggravating circumstances include the following. Appellant has previously been convicted of a felony involving violence against a person. That conviction resulted from appellant's attempted murder of another former wife.[[1]] In that prior incident, the appellant forcibly entered the woman's home and, in front of the children, threw her to the floor, placed his right foot on her back, and fired a twenty-two pistol into her head. Miraculously, she lived.
In the instant case, appellant again demonstrated his propensity toward calculated homicide in the killing of Ann Bovard. The murder was the final, deliberate stroke in appellant's campaign of terror against his ex-wife. He sought her out in the early morning hours, stalked her in the dark, and then in cold blood killed her with a shotgun at close range.
After remand for resentencing on another ground,[2] the trial court again imposed the death sentence, and Harvard again appealed to the Supreme Court of Florida. Again, this Court affirmed Harvard's conviction and sentence, stating the heinous, atrocious, and cruel nature of the crime, and expressly rejecting Harvard's contention "that the trial judge failed to adequately consider mitigating circumstances."[3] The United States Supreme Court denied certiorari.[4]
In the latest proceedings, filed August 27, 1985, Harvard moves, under Rule 3.850, Florida Rules of Criminal Procedure, to vacate his sentence, claiming:
Mr. Harvard was denied an individualized and accurate capital sentencing determination due to the unconstitutional application of the Florida capital sentencing statute which was reasonably interpreted at the time of Mr. Harvard's trial in June, 1974, to restrict consideration of mitigating circumstances to only those circumstances narrowly set out in Section 921.141(6) with the result that significant, relevant mitigating features of the case were not investigated, presented or considered in the determination of whether Mr. Harvard should be sentenced to die, in violation of the Sixth, Eighth and Fourteenth Amendments.
This claim was asserted and rejected on appeal to the Supreme Court of Florida in 1982.[5] Harvard now reasserts the same claim with two additional ingredients: (1) the trial court's statement in its order of August 27, 1985,[6] and (2) the decision of *542 the United States Court of Appeals for the Eleventh Circuit in Songer v. Wainwright,[7] decided August 16, 1985.
The majority now reverses this Court's previous position and announces the following "independent view:"
It is our independent view that an appellant seeking postconviction relief is entitled to a new sentencing proceeding when it is apparent from the record that the sentencing judge believed that consideration was limited to the mitigating circumstances set out in the capital sentencing statute.
The rule announced by the majority is contrary to Witt v. State, 387 So.2d 922 (Fla. 1980), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980), a leading decision of this Court. In the Witt decision, this Court stated its unanimous view that a claim such as is asserted here could not be the basis for postconviction relief under Florida law.[8] The Witt decision held that only changes of major constitutional proportions adopted by the Supreme Court of Florida or the United States Supreme Court could form the basis for a collateral attack on a final conviction and sentence in a capital case.
In Witt, this Court held (387 So.2d 922, 927):
[I]f punishment is ever to be imposed for society's most egregious crimes, the disposition of a particular case must at some point be considered final notwithstanding a comparison with other individual cases.
... Quite clearly, the main purpose for Rule 3.850 was to provide a method of reviewing a conviction based on a major change of law, where unfairness was so fundamental in either process or substance that the doctrine of finality had to be set aside. To the extent we permit this rule to be used as a second procedure to balance individual applications of the death penalty  our first being on direct review of the conviction and sentence  the limited historical role for post-conviction proceedings becomes distended. For the policy reasons which underpin the finality of decisions, and because the imposition of any death penalty would be averted by a different construction of our rule, we now declare our adherence to the limited role for post-conviction relief proceedings, even in death penalty cases. [emphasis added]
The Witt decision held that only "major constitutional changes of law will be cognizable in capital cases under Rule 3.850," changes such as exemplified by Coker v. *543 Georgia[9] and Gideon v. Wainwright.[10] This Court, in Witt, contrasts "jurisprudential upheavals" such as resulted from Coker and Gideon, supra, with evolving case law refinements and held (387 So.2d 929, 931):
In contrast to these jurisprudential upheavals are evolutionary refinements in the criminal law, affording new or different standards for the admissibility of evidence, for procedural fairness, for proportionality review of capital cases, and for other like matters. Emergent rights in these categories, or the retraction of former rights of this genre, do not compel an abridgement of the finality of judgments. To allow them that impact would, we are convinced, destroy the stability of the law, render punishments uncertain and therefore ineffectual, and burden the judicial machinery of our state, fiscally and intellectually, beyond any tolerable limit.
... .
To summarize, we today hold that an alleged change of law will not be considered in a capital case under Rule 3.850 unless the change: (a) emanates from this Court or the United States Supreme Court, (b) is constitutional in nature, and (c) constitutes a development of fundamental significance. Most law changes of "fundamental significance" will fall within the two broad categories described earlier.
In Jackson v. State, 438 So.2d 4 (Fla. 1983), this Court affirmed the trial court's denial of a 3.850 motion based on a claim of ineffective assistance of counsel because of defense counsel's belief that he could not present evidence of nonstatutory mitigating circumstances. In rejecting that collateral challenge, this Court held (438 So.2d at 6):
Jackson contends that his trial counsel believed he could not present evidence of nonstatutory mitigating circumstances and that this belief patently operated to exclude relevant mitigating evidence. Citing Proffitt v. Wainwright, 685 F.2d 1227, 1248 (11th Cir.1982), which concluded that such a belief by a defense attorney was entirely reasonable, Jackson claims that the treatment of mitigating evidence has evolved into a change in the law which should give him relief under Witt v. State, 387 So.2d 922 (Fla.), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). We disagree both with Jackson's contention and with the federal court's conclusion. [emphasis added]
The dissenting judge in Jackson would have held that Lockett, supra, was a significant change in the law and a basis for affording relief under Witt v. State, supra.[11]
The wisdom of the Witt and Jackson decisions is readily apparent and well illustrated by the instant case and the implications arising from the majority's opinion. Eleven years after entry of judgment of conviction and sentence and after plenary appeals and review by the United States Supreme Court, this Court would now allow a belief, presumably of fact or law, existing in the mind of a trial judge, as a basis for relief under 3.850 even though that "belief" had not resulted in any action by the trial court or any demonstratable prejudice to the defendant. The consequence of this "independent view" is to *544 create a substantial inroad on the concept of finality of judgments, undermining confidence in the integrity of our criminal procedures. See United States v. Addonizio.[12]
The result achieved here is not required by the opinion of the United States Court of Appeals for the Eleventh Circuit in Songer v. State, supra. The majority carefully does not place its reliance on that opinion,[13] reaching its result "independently." The Songer view as to the law, including its application of Lockett[14] and Eddings[15] to the particular facts before it, is not controlling in Florida's postconviction proceedings. This is clear from both the Witt and Jackson decisions, quoted supra. Further, Songer, in its statement that "Lockett is retroactive," relies on the decisions of the United States Supreme Court in Eddings v. Oklahoma[16] and Jordan v. Arizona.[17] Neither case holds that Lockett is retroactive, and neither case applies Lockett retroactively in a postconviction proceeding.[18] As held by this Court in Witt v. State, 387 So.2d 922, 925 (Fla. 1981), quoting United States v. Addonizio, 442 U.S. 178, 184, and note 11, 99 S.Ct. 2235, 2240, and note 11, 60 L.Ed.2d 805 (1979):
It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice.
This basic distinction between direct appeal and collateral attack was evidently ignored by the federal court in Songer when it announced the view that Lockett was retroactive.[19]
I must also dissent from the relief afforded by the majority, to-wit: an automatic vacation of sentence and remand for resentencing. What we have before us here is considerably less than what was before the federal court in Songer, where the state trial judge conducted an evidentiary hearing on the 3.850 motion and *545 thereafter entered a memorandum opinion, specifically finding:[20]
[T]he evidence and testimony proffered at the Post-Conviction hearing indicated there was evidence at the time of the Songer trial that could be presented as mitigating circumstances under present case and statutory law... .
In the instant case, the trial court did not conduct an evidentiary hearing, no testimony subject to cross-examination was offered, and there was no finding by the trial court equivalent to that in Songer.[21] This case is therefore determined by the majority as requiring an automatic remand for resentencing based entirely on the trial court's comment as to a recollected state of mind and interpretation of the law of 11 years before.
Under existing law, inquiry into the state of mind of a judge[22] or a juror[23] is not allowed as a basis for discrediting a final judgment. In Tafero v. State, 459 So.2d 1034, 1037 (Fla. 1984), this court rejected Tafero's claim that the trial court's belief that only statutory mitigating circumstances could be considered required resentencing with the statement:
Conjecture about what the court might have done if presented with nonstatutory mitigating evidence is merely that  conjecture.
The majority view elevates a claim based on the judge's thought process above that of a claim of ineffective assistance of counsel and dispenses with the need for a showing of error in the proceedings or prejudice to the defendant, requirements stated by the United States Supreme Court and this Court in similar cases. See, e.g., Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
For all of the foregoing reasons, I respectfully dissent.
BOYD, C.J., and CHARLES MINER, Associate Justice, concur.

ON MOTIONS FOR REHEARING
The Motions for Rehearing filed in the above cause are hereby denied.
BOYD, C.J., and OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
*546 ANNE C. BOOTH, Associate Justice, concurs in denying the Motion for Rehearing filed for Appellant, but dissents with an opinion from denying the Motion for Rehearing filed for Appellee, in which CHARLES MINER, Associate Justice, concurs.
ANNE C. BOOTH, Associate Justice, dissenting.
Rehearing should be granted and the trial court's order affirmed for the reasons stated in my prior dissent.
Failing that, this Court should grant the State's motion for rehearing and clarification and allow reargument for the reasons stated in the State's motion. That motion, in pertinent part, is as follows:
[T]here are presently close to forty (40) other inmates on Death Row who were sentenced to death prior to the date of the Lockett decision, July 3, 1978 and/or prior to this court's decision in Songer v. State, 365 So.2d 696 (Fla. 1978). Presumably, the sentencing judge in each one of these cases could have, as this court describes it, "reasonably understood" Florida's death penalty statute to preclude consideration of non-statutory mitigating evidence. As presently defined, the instant Harvard decision can be read to set out an absolute rule to the effect that any such prisoner, upon the proper allegation, is entitled to an automatic resentencing.
... .
... [T]he instant decision makes no assessment of the allegedly excluded evidence which appellant proffered to the court below and which is presently a part of the record on appeal. Appellee urges that some assessment must be made prior to any reversal. .. . [T]he evidence now presented is largely cumulative in nature to that presented at the sentencing hearings... .
Again, should this court not be disposed to grant rehearing, appellee requests clarification of the scope of the instant ruling, because, as argued earlier, appellant Harvard is unlikely to be the only litigant desiring to raise the instant claim. Apparently what has distinguished appellant Harvard from other claimants seeking to raise this issue is the fact that his sentencing judge chose to describe his thought processes on the record. The question will undoubtedly be raised, given the age of most pre-Songer sentences in circumstances where the original sentencing judge is dead or, if alive, not disposed to discuss his reasons for sentencing. Appellee respectfully states its agreement with the dissent, as well as with the Eleventh Circuit in its original decision in Washington v. Strickland, 673 F.2d 879, 902-906 (11th [5th] Cir.1982), regarding the impropriety of delving into the mind of the sentencer and seeking to impeach is prior valid action through after-the-fact testimony. It is more than likely that following this court's opinion in Harvard, circuit judges throughout the state will find themselves as witnesses in their own courtrooms. Appellee requests further clarification of this court's ruling regarding the obligation of sentencing judges to testify as to their reasons for sentencing.
The defendant was fairly tried, convicted, and sentenced 11 years ago for the brutal slaying of Ann Bovard. His background included the shooting of two other women. The trial judge did not reject any mitigating evidence offered by the defendant and correctly sentenced him in accordance with the existing law. To the extent that the trial court may not have considered certain character evidence in mitigation during sentencing, the State correctly points out:
Given the presence of two valid statutory aggravating circumstances sub judice, and no valid statutory mitigating circumstances, the state maintains, in the spirit of Tedder, that it can be said by this court that no reasonable person would, in light of the instant proffered evidence, override such recommended sentence of death and impose one of life imprisonment. Accordingly, appellee moves this honorable court to rehear the instant decision *547 and affirm the denial of the motion for post-conviction relief in all respects.
I would grant rehearing.
NOTES
[1] In subsequent proceedings, it was established the 1969 felony conviction was for the shooting of Harvard's first wife's sister. Harvard v. State, 414 So.2d 1032, 1034-35 (Fla. 1982). In the 1969 incident, Harvard shot both his first wife and her sister in the head. Neither victim of that shooting died.
[2] On rehearing, the Supreme Court of Florida remanded for resentencing under Gardner v. Florida, 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977), because of the trial court's consideration of confidential information at sentencing. The United States Supreme Court denied certiorari, 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1977).
[3] Harvard v. State, 414 So.2d 1032, 1036 (Fla. 1982).
[4] Cert. denied, 459 U.S. 1128, 103 S.Ct. 764, 74 L.Ed.2d 979 (1983).
[5] Motion for Rehearing at pages 7-8, filed April 30, 1982, in the Supreme Court of Florida:

The judge was thus operating under the mistaken belief that consideration of mitigating factors was strictly limited to the statute... . The restriction of the consideration of mitigating circumstances by the sentencing judge violated the Eighth and Fourteenth Amendment dictates of Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869 [71 L.Ed.2d 1] (1982) and Lockett v. Ohio, 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d 973] (1978).
[6] Trial court's order of August 27, 1985, denying Motion to Vacate Death Sentence:

With respect to the claim in paragraph 16 of the Motion to Vacate, the Court accepts as true the factual premise underlying this claim: that reasonable lawyers and judges at the time of Mr. Harvard's trial could have mistakenly believed that non-statutory mitigating circumstances could not be considered. The Court certainly carried out its responsibility on the basis of that premise at the time of Mr. Harvard's trial. Notwithstanding that this belief turned out to be contrary to the command of the Eighth Amendment as it would later be interpreted by the Supreme Court in Lockett v. Ohio, 438 U.S. 586 [98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the Court determines that our system of criminal justice cannot accomodate such a change in principles of law so many years later. If counsel and trial judges in 1974 were required to be clairvoyant, so were appellate counsel in the period between 1975 and 1977 when Mr. Harvard's appeal was pending in the Supreme Court of Florida. Appellate counsel are not expected to be any more clairvoyant than trial judges or trial lawyers... .
[7] 769 F.2d 1488 (11th Cir.1985):

During proceedings held in late January, 1985, the state trial judge made statements, for the first time, indicating that he interpreted Florida Statutes § 921.141(6) at the time of petitioner's trial as limiting consideration of mitigating evidence to those "enumerated items." ... There is no doubt today about this question. Lockett is retroactive, see e.g., Eddings v. Oklahoma, 455 U.S. 104, 118, 102 S.Ct. 869, 878, 71 L.Ed.2d 1 (1982); Jordan v. Arizona, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978); Spivey v. Zant, 661 F.2d 464 (5th Cir. Unit B 1981).
... . Consequently, it is clear that the state sentencing judge refused to give any consideration to nonstatutory mitigating evidence at either the first or second sentencing proceedings. The interests of justice require that this be corrected.
[8] One of claims rejected in Witt v. State, 387 So.2d 922, 924 (Fla. 1980), was based on Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Witt states appellant's claim:

(5) an alleged change in the law, reflected by an aggregation of the individual opinions in Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), requiring that the state, before imposing the death penalty, establish that the defendant intended to kill the victim; ... .
[9] 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), forbidding death penalty for crime of rape of adult woman.
[10] 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), indigent's right to counsel.
[11] Jackson v. State, 438 So.2d 4, 7 (Fla. 1983) (dissenting opinion):

Lockett was a significant change in the law and meets the test for affording relief as enunciated in Witt v. State, 387 So.2d 922 (Fla. 1980), cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). I would reverse the denial of the 3.850 hearing without an evidentiary hearing and require consideration of what evidence was reasonably available and the reason for its nonproduction. If Jackson were unfairly deprived of consideration of such evidence, he should have a new sentencing hearing.
[12] 442 U.S. 178, 185, 99 S.Ct. 2235, 2240, 60 L.Ed.2d 805, 811 (1979):

When Congress enacted § 2255 in 1948, it simplified the procedure for making a collateral attack on a final judgment entered in a federal criminal case, but it did not purport to modify the basic distinction between direct review and collateral review. It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment. The reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system of justice... .
[13] Petition for certiorari to the United States Supreme Court was filed September 30, 1985, and is pending. In a previous petition in Songer, the United States Supreme Court denied certiorari and, based on facts as stated in the dissenting opinion of Brennan, J., was directly presented with a Lockett claim, which the majority rejected. ___ U.S. ___, 105 S.Ct. 817, 819-22, 83 L.Ed.2d 809, 812-14 (1985) (Brennan, J., dissenting from denial of certiorari). See, Jacobs v. Wainwright, ___ U.S. ___, 105 S.Ct. 545, 83 L.Ed.2d 433 (1984) (facts from Marshal, J., dissenting), denying certiorari in Florida death case where trial court rejected nonstatutory mitigating evidence, and counsel failed to preserve issue on appeal.
[14] Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) (plurality opinion), held an Ohio statute unconstitutional because it limited the mitigating circumstances which may be considered by the sentencer.
[15] Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), a 5-4 decision, held trial court erred in refusing to consider in mitigation substantial evidence presented of turbulent family history and of serious emotional disturbance.
[16] Ibid.
[17] 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978).
[18] Lockett, supra, decided July 3, 1978, while Jordan and Eddings, supra, were pending on direct review, was on the books and part of the law controlling those cases.
[19] Third case relied on in Songer, supra, is Spivey v. Zant, 661 F.2d 464 (5th Cir. Unit B 1981), wherein Lockett was applied "retroactively" in a federal habeas corpus challenge to a 1977 Georgia capital conviction, and the court held the state trial court's sentencing instructions to jury were constitutionally inadequate.
[20] Songer v. Wainwright, 769 F.2d 1488, 1493 (11th Cir.1985) (dissenting opinion, quoting trial court's memorandum opinion, p. 8).
[21] The trial court did not reject mitigating evidence at the sentencing hearing; it was not proffered. Harvard's claim in the present proceeding is that he would have had evidence presented at the 1974 sentencing hearing relative to his family background, character, and reports of psychologists/psychiatrists.
[22] In Fayerweather v. Ritch, 195 U.S. 276, 277, 25 S.Ct. 58, 59, 49 L.Ed. 193, 213 (1904), the court held that the res judicata effect of a judgment or decree could not be limited by the oral testimony of a trial judge some six years after his decision to the effect that he did not consider certain matters put at issue by the pleadings, stating the rule as follows:

Tested by the rule thus laid down the testimony of the trial judge given six years after the case had been disposed of, in respect to matters he considered and passed upon, was obviously incompetent... . [N]o testimony should be received except of open and tangible facts,  matters which are susceptible of evidence on both sides. A judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision.
[23] United States v. D'Angelo, 598 F.2d 1002 (5th Cir.1979):

The rule of common law is that a juror may not impeach his verdict... . The necessary consequence of the rule against examination of the jury's mental process is that convictions must stand despite the presence of plausible suspicion that the jury's mental process was ill conceived... .
The sanctity of the verdict may be impugned only by evidence of improper external influences of the jury's decision ... or by a post-verdict determination that the evidence did not warrant submission to the jury in the first instance. Inquiry into the conscience or compliance of jurors, by contrast, requires inquiry into a matter that essentially adheres in the verdict, Mattox v. United States, 146 U.S. 140 at 149, 13 S.Ct. [50] at 53 [36 L.Ed. 917], and is thus strictly forbidden.
In Songer v. State, 463 So.2d 229 (Fla. 1985), this court held that testimony of a juror that he believed he could only consider statutorily enumerated mitigating factors was inadmissible in a 3.850 proceeding.