[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15745
Non-Argument Calendar
_____

D.C. Docket Nos. 8:11-cv-00428-EAK-AAS; 8:02-cr-00329-EAK-AAS-1


JOAQUIN MARIO VALENCIA-TRUJILLO,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(August 2, 2019)

Before ED CARNES, Chief Judge, TJOFLAT, and JORDAN, Circuit Judges.

PER CURIAM:

Joaquin Mario Valencia-Trujillo is a federal prisoner serving a 480-month sentence after he was extradited from Colombia.  In an earlier decision we found that he did not have standing to raise a claim that the United States violated the rule of specialty by prosecuting him for crimes beyond those that Colombia authorized in his extradition agreement.  United States v. Valencia-Trujillo, 573 F.3d 1171, 1173 (11th Cir. 2009).[1]  Valencia-Trujillo then filed a motion to vacate his sentence under 28 U.S.C. § 2255.  The district court denied that motion in part and we granted a certificate of appealability limited to the following issue: Whether Valencia-Trujillo's counsel was ineffective for failing to seek enforcement of his extradition agreement and the rule of specialty and obtain diplomatic protests from Colombia.

## I.

In 2003 Valencia-Trujillo was extradited from Colombia after being indicted in the United States for conspiracy charges related to money laundering and importing cocaine.  His extradition papers stipulated that he could not be tried in the United States for acts that occurred before December 17, 1997 so as not to violate a provision of Colombia's constitution.  After he was extradited to, and

---

[1] The rule of specialty is a principle of international law that "stands for the proposition that the requesting state, which secures the surrender of a person, can prosecute that person only for the offense for which he or she was surrendered by the requested state or else must allow that person an opportunity to leave the prosecuting state to which he or she had been surrendered." Valencia-Trujillo, 573 F.3d at 1173–74 (quotation marks omitted).

indicted in, the United States, Valencia-Trujillo moved to enforce the rule of specialty by redacting from his indictment all references to any acts occurring before December 17, 1997 and prohibiting the introduction of any evidence at trial originating before that date.

Before the district court scheduled a hearing on his motion to enforce Valencia-Trujillo moved to postpone the hearing in March 2005. In his motion he wrote that "both the Colombian Supreme Court and the administration of Colombian President Uribe" had informed his Colombian counsel "that official actions" relevant to his extradition were imminent. But at the rescheduled hearing Valencia-Trujillo's counsel said that although he had expected Colombia to produce new documents regarding Valencia-Trujillo's extradition, it had not done so and he was not optimistic that such documents would be forthcoming. At the hearing Valencia-Trujillo's counsel also recognized that Valencia-Trujillo was extradited only under an extradition agreement and not a treaty, but contended that the rule of specialty applied regardless of whether a treaty was in effect.

The district court issued an order redacting certain predicate acts from Valencia-Trujillo's indictment and putting in place several other measures designed to prevent the jury from improperly considering evidence of conduct occurring before 1997. But the court declined to prohibit the introduction of evidence of pre-1997 conduct at trial if the evidence was otherwise admissible.

In 2006 a jury found Valencia-Trujillo guilty after a 66-day trial and the court sentenced him to 480 months imprisonment.  On direct appeal Valencia-Trujillo argued that the district court violated the rule of specialty.  See Valencia-Trujillo, 573 F.3d at 1177.  He based his theory of standing on the United States-Colombia treaty of 1979, arguing that it gave him a private right of enforcement.  Id. at 1177–78.  We held that he did not have standing to bring his rule of specialty claim because the rule applied only to extraditions that, unlike Valencia-Trujillo's, were conducted under a treaty.  Id. at 1179, 1181.

In 2011 Valencia-Trujillo filed a pro se motion to vacate his sentence.  He asserted 36 grounds for relief, including his claim that his attorneys were ineffective for failing to secure diplomatic protests from Colombia that would have given him standing to assert his rule of specialty claim on direct appeal.  His motion was held in abeyance for several years until he was able to obtain new counsel.

In 2016 Valencia-Trujillo's newly obtained counsel filed three diplomatic notes issued by Colombia between 2014 and 2016 that expressed concern with our holding on direct appeal that the rule of specialty could not be raised by a defendant in the absence of an extradition treaty.  The notes also alleged that the district court did not honor Colombia's extradition conditions, noting that the court admitted evidence of acts that occurred before December 17, 1997, and that there

were differences between the charges in the Unites States' extradition request, the indictment, and the final verdict.

In 2017 the district court issued an order dismissing all but one of the 36 grounds in Valencia-Trujillo's motion to vacate.[2]  Valencia-Trujillo now appeals, contending that the district court erred in dismissing his claim that his attorneys provided ineffective assistance of counsel by failing to secure diplomatic notes that he contends would have given him standing to raise his rule of specialty claim on direct appeal.

---

[2] Valencia-Trujillo was later resentenced and again received a sentence of 480 months imprisonment.  He contends that the district court erred in resentencing him under the 2006 version of the United States Sentencing Guidelines instead of the 2000 version.  We issued a certificate of appealability only for the issue of whether his counsel was ineffective "for failing to seek enforcement of the extradition agreement and the rule of specialty and obtain diplomatic protests from Colombia."  It is unclear if Valencia-Trujillo's challenge to his resentencing is a claim raised for the first time on direct appeal or a collateral attack requiring a certificate of appealability.  See Davenport v. United States, 217 F.3d 1341, 1344 n.6 (11th Cir. 2000) (holding that in reviewing a § 2255 motion our review is limited to the issues specified in the certificate of appealability).  In any event, we will resolve that ambiguity by granting a certificate of appealability now and denying Valencia-Trujillo relief on the merits.

Valencia-Trujillo argues that because applying the 2000 version of the manual would have resulted in a lower guidelines range, the district court violated the ex post facto clause by applying the later version because all of the predicate acts cited by the United States to justify his extradition occurred before May 2000.  See Peugh v. United States, 569 U.S. 530, 533 (2013) (holding that it violates the ex post facto clause when a defendant is sentenced under guidelines promulgated after he committed his criminal acts and the guidelines provide for a higher sentencing range than those in place at the time of those acts).  Even if we assume that Valencia-Trujillo's guidelines range would in fact have been lower under the 2000 guidelines, this argument is meritless because the United States' request for extradition explicitly noted that his indictment "refer[s] to actions . . . continuing up to and including August 22, 2002."  So the district court did not err in resentencing Valencia-Trujillo under the later version of the guidelines.

5

II.

"In reviewing the denial of a § 2255 motion, we examine legal issues de novo and underlying factual findings for clear error." Jones v. United States, 224 F.3d 1251, 1256 (11th Cir. 2000).

To show that he was denied his Sixth Amendment right to effective assistance of counsel a prisoner must show that (1) his counsel's performance was deficient in that it "fell below an objective standard of reasonableness," and (2) that his counsel's deficient performance was prejudicial. Id. at 1257 (quoting Strickland v. Washington, 466 U.S. 668, 688 (1984)). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. To show that challenged conduct is unreasonable "a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). Reasonable conduct "cannot and does not include a requirement to make arguments based on predictions of how the law may develop." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994) (quotation marks omitted).

Valencia-Trujillo alleges that his attorneys were ineffective because they did not obtain diplomatic protests from the Colombian government. We disagree. The record shows that Valencia-Trujillo's counsel collaborated with his Colombian

counsel in an attempt to obtain diplomatic notes and convinced the district court to postpone its hearing on Valencia-Trujillo's motion to enforce in the hope that that attempt would be successful.  Valencia-Trujillo claims that such protests were "readily available" in 2005, but presents no evidence that this is true other than the fact that he was able to obtain them in 2014 and 2016.  There are innumerable reasons why Colombia might have been amenable to such entreaties in 2014, but not nine years earlier.  And given the evidence in the record, such an unsupported assertion is far from enough to convince us that any competent counsel would have done more to obtain such protests than Valencia-Trujillo's attorneys did.  Id.

And even if we assumed that Valencia-Trujillo's attorneys had the ability to secure diplomatic protests in 2005, our precedent at that time did not establish that such protests were necessary to preserve standing.  See United States v. Puentes, 50 F.3d 1567, 1574 (11th Cir. 1995) ("[E]ven in the absence of a protest from the requested state, an individual extradited pursuant to a treaty has standing to challenge the court's personal jurisdiction under the rule of specialty.").  An attorney's performance cannot fall below an objective standard of reasonableness for failing to predict developments in the law, and we do not think Valencia-Trujillo's counsel performed deficiently here.  See Spaziano, 36 F.3d at 1039.

**AFFIRMED**.

7